LETTS, Chief Judge.
Florida Power & Light (FP&L) appeals from a final summary judgment denying it credit for ad valorem taxes paid by it and collected by the City on behalf of the “Downtown Development Authority of the City of Fort Lauderdale” (DDA). We reverse.
Under the franchise agreement entered into between the City and FP&L, the latter was required to pay compensation to the City in an annual sum equal to six percent of its revenues obtained from electricity sales, less “the amount of all taxes, licenses and other impositions levied or imposed . . . by the [City] upon [FP&L’s] electric property business or operations. . . . ”
Needless to say FP&L wants to take credit for the tax levied by the City for the benefit of the DDA in an amount, which over several years, has added up to in excess of $225,000. However the City claims FP&L is not entitled to any credit because the DDA, created by a special act of the legislature, is a separate and distinct entity over which the City has little or no control. Further, the City argues that in collecting the tax, it is only performing a ministerial act, has no discretion over the amount of the tax to be levied and is merely a conduit through which all the revenues received, flow to the DDA treasury.
We do not dispute any of the foregoing. However without protracted legal analysis, we point out that the written franchise entitles FP&L to a credit for “all taxes . . . and other impositions levied or imposed by the [City].” There are no exceptions, exclusions or limitations.
Chapter 69-1056, Laws of Florida Special Act of 1969 which created the DDA provides in pertinent part:
Section 10. The director shall prepare and submit for the approval of the Board a budget for the operation of the Authority for the next fiscal year. The budget shall conform to the fiscal year of the city and shall contain the information required of all City Departments. After approval by the Board, a copy of the budget shall be delivered to the city by the director with a statement of the millage required therefor as determined by the Board, which millage shall be levied by the City Commission not to exceed the limits fixed by law. . . .
Section 11. The City Commission is authorized to levy an ad valorem tax on all downtown real and personal property not exceeding one mill on the dollar valuation (as such valuations are assessed for the general ad valorem roll of the city) of such property for the purpose of financing the operation of the Authority. (Emphasis supplied).
Furthermore, to take one year as an example, the 1979 City resolution on this subject provides as follows:
RESOLUTION NO. 79-295
A RESOLUTION LEVYING AN AD VALOREM TAX FOR FISCAL YEAR 1979/1980 ON BEHALF OF THE DOWNTOWN DEVELOPMENT AUTHORITY OF THE CITY OF FORT LAUDERDALE, PURSUANT TO CHAPTER 69-1056, LAWS OF FLORIDA, SPECIAL ACTS OF 1969, AND CERTIFYING SAME TO THE COUNTY OFFICIALS.
* * * * * *
NOW, THEREFORE, BE IT RESOLVED BY THE CITY COMMISSION OF THE CITY OF FORT LAUDER-DALE, FLORIDA:
*612 SECTION 1. That pursuant to the provisions of Chapter 69-1056, Laws of Florida, Special Acts of 1969, relating to the Downtown Development Authority of the City of Fort Lauderdale, Florida, the City Commission of the City of Fort Lauder-dale does hereby levy on all property subject to an ad valorem tax both real and personal, lying within the “Downtown” area of Fort Lauderdale, as defined in said Act, a tax of 0.7271 mills for the purpose of financing the operation of the Downtown Development Authority, plus a tax of 5 mills for debt service payment and reserve for the bonds of said Downtown Development Authority.
SECTION 2. That such tax levy shall be certified by the City Clerk to the County Property Appraiser, County Tax Collector and Board of County Commissioners of Broward County, Florida, by delivering a certified copy of this Resolution to each, so that such levy and millage may be included in the total millage to be certified by the Board of County Commissioners of Broward County, Florida, to the Property Appraiser and Tax Collector of Broward County, Florida, for imposition against all property located within the aforesaid “Downtown” area of the City of Fort Lauderdale, Florida, liable to taxation.
ADOPTED this the 5th day of September, 1979.
(Emphasis supplied).
From the language above quoted, it is impossible to conclude other than that the amount to be levied is a tax and that it is the City of Fort Lauderdale, that is doing the levying thereof.[1] As we have already said, it is clear that FP&L is entitled to credit under the terms of the franchise agreement for all taxes and impositions levied by the City, not just those that the City, in its infinite wisdom, sees fit to permit credit for. The City’s remedy, if any, must be to renegotiate and modify the agreement rather than contort the meaning of its present perfectly plain phraseology.
Any conceivable doubt that we might have had as to the correctness of our conclusion was laid to rest at oral argument when it was conceded that under the Special Act, all of the assets of the DDA are to revert to the City no later than the year 2010 (see Section 14 thereof). This ultimate resolution belies all attempts to argue that the City and the DDA are separate entities connected only by the City’s role as the DDA’s collector of taxes. It should also be remembered that the Very name of this authority as set forth in the Act is: “The Downtown Development Authority of the City of Fort Lauderdale" (Section 1(1) of the Special Act, emphasis supplied).
From the sum of the foregoing, we hold that FP&L is entitled to this annual credit and we remand this cause with directions to enter a summary judgment in favor of FP&L in accordance herewith.
REVERSED AND REMANDED.
MOORE and BERANEK, JJ., concur.

. We have not ignored the City’s argument that under several definitions of the word “levy,” what it is doing in the instant case is not really levying, but only collecting the tax. The problem with that argument is that the City itself uses the word “levy” in the franchise agreement, in its resolutions and caused it to be used in the special act. It would be patently unfair to allow it to vary the definition of the same word from document to document depending on which is to its advantage.